UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL PAULICK,

          Plaintiff,

v.

STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., ET AL.,

          Defendants.

_____/

No. C-10-01919 JCS

**ORDER DENYING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION, GRANTING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE
SUMMARY ADJUDICATION AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [Docket Nos. 70, 76, 88]**

## I.    INTRODUCTION

       Plaintiff Michael Paulick filed this action alleging violations of state and federal law and

seeking damages and the removal of architectural barriers to accessibility at the Westin Verasa

Hotel, in Napa, California.  Presently before the Court are the following motions: 1) Defendants'

Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss"); 2) Plaintiff's

Motion for Summary Judgment ("Plaintiff's Summary Judgment Motion"); and 3) Defendants'

Motion for Summary Judgment or in the Alternative Summary Adjudication ("Defendants'

Summary Judgment Motion").  In addition, the parties filed numerous motions to strike in

connection with the summary judgment motions.  *See* Docket Nos. 99, 101, 103, 104, 106, 108.[1]  A

hearing on the motions was held on Friday, June 15, 2012 at 9:30 a.m.  Subsequently, the parties

filed additional materials addressing concerns expressed by the Court at the hearing.  The parties

have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. §

_____

    [1]Because the Court does not rely on the evidence to which the parties have objected those
motions are denied without prejudice on the basis that they are moot.

**United States District Court**
For the Northern District of California

636(c).  For the reasons stated below, the Motion to Dismiss is DENIED.  Defendants' Summary

Judgment Motion is GRANTED.  Plaintiff's Summary Judgment Motion is DENIED.

## II.     BACKGROUND

### A.     Procedural Background

Plaintiff initiated this action on May 4, 2010, alleging discrimination on the basis of his

disability based on architectural barriers he encountered when he stayed at the Westin Verasa Hotel

("Hotel"), in Napa, California, in November 2009.  He asserted the following claims: 1) denial of

full and equal access to a public accommodation under California Health and Safety Code Sections

19955 *et seq.* and California Civil Code Sections 51, 52, 52.1, 54.1 and 55 ("the State Law Claims");

and 2) discrimination on the basis of disability, in violation of Title III of  the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*  Plaintiff named as defendants

Starwood Hotels & Resorts Worldwide, Inc., which was dismissed without prejudice soon after the

action was filed, and Intrawest Napa Development Company LLC, which owned the Hotel at the

time the complaint was filed.  On July 21, 2010, Plaintiff filed a first amended complaint adding

Intra West Napa Riverbend Hospitality Management, LLC as a defendant.[2]

On August 6, 2010, the parties held their joint site inspection pursuant to General Order 56,

and Plaintiff's expert, Peter Margen, completed his "Survey, Report, and Recommendations" on

August 18, 2010 (hereinafter, the "August 18, 2010 Report").   Declaration of Sidney J. Cohen in

Opposition to Defendants' Motion for Summary Judgment or in the Alternative, Summary

Adjudication ("Cohen Opposition Decl."), ¶ 5; *see also* Declaration of Peter Margen in Support of

Plaintiff Michael Paulick's Motion for Partial Summary Judgment ("Margen Motion Decl."), Ex. 3.

According to Plaintiff's counsel, Sidney Cohen, he emailed the August 18, 2010 Report to counsel

for Intrawest the next day.  Cohen Opposition Decl., ¶ 5.

Sometime after August 19, 2010 and before September 3, 2010, counsel for the parties

learned that the Hotel had been purchased by VY Verasa Company LLC ("VY Verasa").  *See*

_____

[2]Hereinafter, the Court refers to the two Intrawest Defendants collectively as "Intrawest."

2

United States District Court

For the Northern District of California

1   Docket No. 27.   Plaintiff's counsel was informed that the August 18, 2010 Report had been

2   forwarded to VY Verasa and that as the owner of the property, VY Verasa would be responsible for

3   any injunctive relief work that might be required.   Cohen Opposition Decl, ¶ 5.

4          On September 8, 2010, Plaintiff filed his Second Amended Complaint, adding VY Verasa as

5   a defendant.   In a letter dated November 9, 2010, Plaintiff's counsel advised VY Verasa's attorney

6   that "[p]er paragraph 4 of [General Order] 56, plaintiff's consultant's August 18, 2010 Report

7   specifies each and all claimed access violations and the corrective action requested of [VY Verasa]

8   for each and all claimed access violations."   Cohen Opposition Decl., Ex. 17.

9          The parties stipulated that the deadline for any further amendments to Plaintiff's complaint

10  was December 19, 2011 and the Court adopted that deadline.   *See* Docket Nos. 45, 52.   Plaintiff did

11  not file any further amended complaint after filing the Second Amended Complaint.

12         On March 23, 2012, Mr. Margen returned to the Hotel for another site inspection.   *See*

13  Margen Motion Decl., ¶ 10.   He completed a Site Inspection and Analysis on March 28, 2012

14  ("March 28, 2012 Supplemental Report").   In the March 28, 2012 Supplemental Report, Mr. Margen

15  states that he requested but was not given access to certain areas.   *Id*. at 2 (identifying areas to which

16  he was not given access during inspection).

17         In the joint statement filed in support of Defendants' Summary Judgment Motion, the parties

18  stipulated that the remaining injunctive relief that Plaintiff sought in this action was limited to the

19  following item numbers in the March 28, 2012 Supplemental Report: 1.6, 2.5, 2.7, 2.8, 2.12, 2.13,

20  3.6, 3.10, 3.18, 3.22-3.28 (La Toque Restaurant), 3.43, 3.48, 4.4, 4.5, 4.13, 4.28, 4.31, 4.34, 4.36,

21  4.37, 4.38, 4.41, 4.43 and 5.1 - 5.99 (guestrooms).   Joint Statement of Undisputed Facts in Support

22  of Defendants' Motion for Summary Judgment ("April 6, 2012 Joint Statement").   The parties also

23  stipulated that Mr. Margen would be permitted to conduct a further inspection as soon as Defendants

24  could arrange for an inspection of all of the remaining items on the same day, and that both parties

25  would be permitted to file supplemental declarations based on the items that Mr. Margen identified

26  as still in dispute.   *Id*.

27

28                                                    3

United States District Court

For the Northern District of California

After the summary judgment motions were fully briefed, Plaintiff filed a supplemental report by Mr. Margen based on an inspection conducted on May 22, 2012 ("the June 4, 2012 Supplemental Report"). The Court then ordered the parties to file a supplemental joint statement identifying the items that remained in dispute in light of the June 4, 2012 Supplemental report. *See* Docket No. 117. In the parties' Joint Statement Pursuant to Court June 7 Order ("June 8, 2012 Joint Statement"), Plaintiff stipulated that the following items were no longer in dispute: 1.6, 2.7, 2.8, 2.12, 2.13, 3.10, 3.18, 3.22, 3.23, 3.25, 3.26, 3.28, 3.43, 3.48, 4.4, 4.28, 4.31, 4.34, 4.36, 4.37 and "those guestroom items in 5.1 through 5.99 that are *not* identified on pages 11 through 17 of the Margen Report at Docket No. 116."

**B.      The Second Amended Complaint**

Plaintiff's Second Amended Complaint contains the following allegations that are relevant to the motions presently before the Court:

> 2.      **SUMMARY**: This case involves the denial of disabled accessible parking, paths of travel, entries, seating, restrooms, counters, guest rooms, swimming pool, whirlpool, signage, vehicle shuttle, on line reservation capability, and related facilities to Mr. Paulick and other disabled persons at the Westin Verasa Hotel (the "Hotel") at 1314 McKinstry Street, Napa, California. Mr. Paulick was denied equal protection of the law and was denied Civil Rights under both California law and federal law. Mr. Paulick was denied his rights to full and equal access at the Hotel because it was not, and is not, properly accessible to disabled persons such as Mr. Paulick who use wheelchairs. Mr. Paulick seeks injunctive relief to require that Defendants make the Hotel and related facilities accessible to disabled persons and to ensure that any disabled person who attempts to use the Hotel and its facilities will be provided accessible parking, paths of travel, entries, seating, restrooms, counters, guest rooms, swimming pool, whirlpool, signage, vehicle shuttle, on line reservation capability, and related facilities. Mr. Paulick also seeks recovery of damages for his personal injuries and discriminatory experiences and seeks recovery of reasonable attorneys' fees, litigation expenses and costs, according to statute.
>
> . . .
>
> 11.      On or about November 3, 2009 Mr. Paulick and his wife arrived at the Hotel for a two (2) night stay. During the course of his stay at the Hotel, Mr. Paulick encountered multiple barriers to access for persons who use walkers and/or wheelchairs, which barriers need to be removed or otherwise modified in order to be brought into compliance with applicable federal and state disabled access statutes and regulations, including 1) the federal Americans with Disabilities Act (ADA), 2) the federal Americans with Disabilities Act Administrative Guidelines (ADAAG), 3) §§19955 Et. Seq., of the California Health & Safety Code and §51,§52,§52.1,§54, §54.1, §55 of the California Civil Code, and 4) the California Building Code (CBC) and California Title 24 regulations. These barriers to access which Mr.

United States District Court

For the Northern District of California

Paulick encountered and which violate federal and state disabled access statutes and regulations include, but are not necessarily limited to, the following:

 A. Lack of compliant International Symbol of Accessibility (ISA) at the primary **entrance** to the Hotel;

 B. Lack of compliant accessible **paths of travel** throughout the public or common areas of the Hotel, including but not necessarily limited to the following: lack of a compliant exit door from the Hotel to the patio; lack of a ramp or lift to access the real estate sales office (steps only); lack of a ramp or other means to access the playing level at the bocce ball court; and lack of handrails and/or lack of compliant handrails;

 C. Lack of a lift to access the **pool** (in a conversation with Hotel employee Lisa, in which Mr. Paulick asked Lisa if there was any method to enter the swimming pool without using the steps, he was told that Hotel staff could carry him into the pool), and lack of a lift to access the **whirlpool**;

 D. Lack of accessible table **seating** in the café /restaurant on the lobby level of the Hotel and lack of accessible seating at the outdoor tables at the Hotel.

 E. Lack of access in "accessible" **guestrooms** in numerous particulars, including but not necessarily limited to the following: because a roll in shower is only available in a suite, the lack of a guest room with a roll in shower in the lower dollar rate of a guest room; lack of an accessible balcony in the tub shower room because of an excessive rise and a non conforming ramp; lack of compliant paths of travel to areas within the "accessible" rooms; lack of compliant height or reach range for numerous items; and lack of compliant features in the bathroom.

12. In addition to the barriers that Mr. Paulick encountered during his stay, the property and premises are not compliant with federal and state disabled access laws and regulations in numerous other particulars, including but not necessarily limited to the following:

 A. Lack of access in the **public men's restroom** near the lobby, including but not necessarily limited to the following: lack of compliant geometric sign on the door; lack of a compliant strike side clearance at the pull side of the door; lack of a compliant coat hook; lack of a compliant lavatory counter height; lack of a compliant clear opening at the end of the urinal alcove; and lack of a compliant distance of the shower head from the rear wall. . . .

SAC, ¶¶ 2, 11, 12 (emphasis in original).

### C. The Motions

#### 1. The Motion to Dismiss

In their Motion to Dismiss, Defendants contend that Plaintiff failed to plead the necessary requirements to establish Article III standing to support his ADA claim for injunctive relief under

the standard articulated by the Ninth Circuit in *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).  Motion to Dismiss at 3.  In particular, Defendants contend that in order to establish standing, Plaintiff is required to identify in his complaint the barriers that he personally encountered, connect the barriers to his disability and state the manner in which the barriers impeded his full and equal enjoyment of the facility.  *Id.*  Defendants further contend that the Court should decline to exercise supplemental jurisdiction over Plaintiff's State Law Claims.

Plaintiff opposes the Motion to Dismiss on the grounds that in his Second Amended Complaint he:

> 1) alleges and identifies specific barriers to access that he encountered at the Hotel that is the subject of this action, 2) alleges that the barriers to access that he encountered violate the ADA statutes and ADAAG regulations and standards relating to his disability, [3]) alleges that although he intends to return to the Hotel which is the subject of this action, he is deterred from doing so until it complies with all federal and state laws, regulations, and standards, and 4) alleges that as a result he is being denied full and equal access at the Hotel.

Opposition to Motion to Dismiss at 1.  Plaintiff further rejects Defendants' assertion that if Plaintiff lacks standing under federal law, the Court should decline to exercise supplemental jurisdiction over his State Law Claims.  *Id*, at 5.  Plaintiff contends that judicial economy, convenience and fairness to litigants weigh in favor or the Court retaining supplemental jurisdiction over the State Law Claims.  *Id*.

### 2.    Defendants' Summary Judgment Motion

Defendants contend that they are entitled to summary judgment as to Plaintiff's ADA claim for numerous reasons.  First, they contend that most of the barriers that remain in dispute have been fixed, rendering the claim moot as to those barriers.  Defendants' Summary Judgment Motion at 4-7.  In particular, Defendants cite to the Declaration of Sara Southam in Support of Defendants' Motion for Summary Judgment ("Southam Motion Decl."), and the supporting evidence attached thereto, in support of their position that the following barriers identified in the March 28, 2012 Supplemental Report have been removed: 2.5, 2.7, 2.8, 2.12, 2.13, 3.10, 5.3, 5.4, 5.6, 5.7, 5.11, 5.20, 5.21, 5.26, 5.30-5.31, 5.32, 5.33, 5.35, 5.80, 5.81, 5.83, 5.84, 5.85, 5.86, 5.87, 5.88, 5.89, 5.90, 5.91 and 5.92.

United States District Court

For the Northern District of California

1    *Id*. at 6-7.

2          Second, Defendants contend that the ADA claim fails because many of the remaining

3    barriers were not specifically identified in Plaintiff's Second Amended Complaint and therefore are

4    subject to dismissal because Defendants did not receive fair notice as to these barriers.  *Id*. at 7-9

5    (citing  *Oliver v. Ralphs Grocery Co.*, 654 F.3d 904 (9th Cir. 2011)).  The barriers Defendants

6    contend were not identified in Plaintiff's Second Amended Complaint are as follows: 1.6, 3.6, 3.16,

7    3.18, 3.22, 3.25, 3.26, 3.27, 3.43, 3.48, 4.4, 4.5, 4.13, 4.28, 4.34, 4.36, 4.37, 4.38, 4.41, 4.43.  *Id*. at

8    8.[3]

9          Third, Defendants argue that a number of the barriers in dispute have no connection to

10   Plaintiff's alleged disability and therefore cannot reasonably be expected to affect Plaintiff's full

11   enjoyment of the Hotel.  *Id*. at 9-10.  These are items 5.2, 5.5, 5.9, 5.10, 5.12, 5.13, 5.14, 5.15, 5.16,

12   5.94 and 5.95.  *Id*. at 9-10.  As to these barriers, Defendants contend, Plaintiff's ADA claim fails

13   under *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 n.7 (9th Cir. 2008).  *Id*. at 9.

14         Fourth, as to barriers that were identified in the March 28, 2012 Supplemental Report as

15   being in violation of California Building Code guidelines (as opposed to ADA Architectural

16   Guidelines ("ADAAG")), Defendants contend that the Court should dismiss the ADA claim on the

17   basis that the Local Building Office ("LBO") has discretion to interpret and enforce Title 24 of the

18   California Building Code and compliance with it.  *Id*. at 10.  Where, as here, the LBO reviewed the

19   plans for compliance and granted a permit, then inspected and approved and granted a certificate of

20   occupancy, Defendants assert, there is a presumption that any variances from the requirements of the

21   code were justified.  *Id*.  Defendants assert they are entitled to summary judgment on this basis as to

22   the following items:  4.31, 5.17, 5.22, 5.8, 5.49, 5.53, 5.82, 5.96-5.97, 5.98, 5.99.  *Id*. at 11.

23

24   _____

25         [3]In their Reply brief, Defendants also contend that they did not receive fair notice as to items 5.1
     to 5.99.  Similarly, in the June 8, 2012 Joint Statement, Defendants contend that they did not receive fair
26   notice as to the items remaining in dispute between 5.1 and 5.99.  In addition, in their Opposition to
     Plaintiff's Summary Judgment Motion, Defendants contend that they did not receive fair notice as to
27   item 2.5.

28                                                                      7

United States District Court

For the Northern District of California

1    Fifth, Defendants contend that the following barriers do not violate the ADAAG at all: 5.1,

2    5.34, 5.59- 5.61, 5.63-5.70, and 5.78.  *Id.* at 11-12.

3    Sixth, as to certain barriers, Plaintiff's expert does not cite to the ADAAG or only cites to a

4    figure in the ADAAG and therefore, Defendants contend, Plaintiff has failed to establish that the

5    ADAAG contains the requirements Plaintiff asserts.  *Id.* at 12.  These are: 3.6, 3.27, 3.43, 3.48, 4.31,

6    4.38, 4.41, 4.5, 5.8, 5.17, 5.22, 5.25, 5.26, 5.27, 5.28, 5.29, 5.37, 5.45, 5.46, 5.47, 5.48, 5.49, 5.51.

7    5.53, 5.54, 5.60, 5.63, 5.65, 5.66, 5.67, 5.69, 5.71, 5.73, 5.74, 5.76, 5.78, 5.82, 5.85, 5.87, 5.88, 5.91,

8    5.92, 5.95, 5.96, 5.98, and 5.99.

9    Seventh, Defendants assert that they are entitled to summary judgment as to all barriers in the

10   restaurant area because these areas are leased to a nonparty, LT Napa Partners.  *Id.*  at 13.  Because

11   LT Napa Partners would be required to perform any corrective work, it is an indispensible party,

12   Defendants contend.  *Id.* (citing *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1344-45 (9th

13   Cir. 1995)).

14   Eighth, Defendants argue that Plaintiff's ADA claim fails as to both Intrawest and VY

15   Verasa to the extent these claims allege design and construction discrimination because Intrawest is

16   no longer the owner of the Hotel (though it was responsible for design and construction) and VY

17   Verasa is not responsible for design and construction because it bought the Hotel after it was built.

18   *Id.*  at 14-15.

19   Ninth, Defendants contend that VY Verasa is only required to remove barriers where such

20   removal is "readily achievable," and Plaintiff has failed to demonstrate that removal is readily

21   achievable.  *Id.* at 15-19.  In support of this position, Defendants cite cases in which court's have

22   held that it is the plaintiff's burden to establish that removal of a barrier is readily achievable.  *Id.*

23   (citing *Colorado Cross-Disability Coalition v. Too (Delaware) Inc.*, 344 F. Supp. 2d 707, 711-712

24   (D. Colo. 2004)).  Defendants further contend that in order to carry this burden, Plaintiff must prove

25   that he *actually* encountered the particular barrier at issue and that because of his particular

26   disability, it limited his full enjoyment of the Hotel.  According to Defendants, Plaintiff fails to meet

27

28                                                    8

United States District Court

For the Northern District of California

1  this burden as to the following barriers:  3.10, 3.18, 4.4 - 4.5, 5.9, 5.19, 5.23, 5.16, 5.18, 5.25, 5.27,

2  5.28 - 5.29, 5.36-5.55, 5.56-5.79, 5.93.  *Id*. at 18-19.

3       Finally, Defendants contend that if the Court finds that Plaintiff's ADA claim is subject to

4  dismissal, it should decline to exercise supplemental jurisdiction over the State Law Claim.  *Id*. at

5  19-22.[4]

6           **3.**      **Plaintiff's Opposition**

7       Plaintiff rejects Defendants' position that his claim is moot because all of the remaining

8  disputed barriers have been fixed.  Plaintiff's Opposition at 5 (citing Southam Motion Decl. at 5).

9  Plaintiff points out that in the Southam Motion Declaration, which is cited to show that the disputed

10  barriers have been removed, Ms. Southam expressly states that she has declined to address the

11  following barriers on the basis that they were not specifically identified in the Second Amended

12  Complaint:  1.6, 3.6, 3.10, 3.18, 3.22,3.25,3.26,3,27, 3.43, 3.48, 4.4, 4.5, 4.13, 4.28,  4.34, 4.36, 4.37,

13  4.38, 4.41, and 4.43.  *Id*.   Further, as to the barriers Ms. Southam addressed in her expert report,

14  Plaintiff contends, the report of Plaintiff's expert, Mr. Margen, shows that these barriers remain non-

15  compliant.[5]  *Id*. at 5-8 (citing Declaration of Peter Margen in Opposition to Defendants' Motion for

16  Summary Judgment Or, in the Alternative, Summary Adjudication ("Margen Opposition Decl.")).

17       With respect to fair notice, Plaintiff argues that Defendants were given fair notice of all of

18  the items in dispute, pointing to the categories of barriers identified in the Second Amended

19  Complaint at paragraph 2, as well as certain barriers relating to the men's public restroom identified

20  in paragraph 12.  *Id*. at 9-10.  Plaintiff further contends that the factual situation in *Oliver* (cited by

21  Defendants) was distinguishable because no specific barriers were alleged in that case.  *Id*. at 11.

22

23          [4]In their factual background, Defendants also present evidence about Plaintiff's home and office

24  arrangements, suggesting that the barriers that are in dispute in this case may not actually impede his access.  Defendants do not, however, tie this evidence to any specific legal argument in their motion.

25

26          [5]The items that are addressed in the Southam Declaration that Plaintiff contends have not been

27  fixed are as follows: 2.5, 2.7, 2.8, 2.12, 2.13, 3.10, 5.3, 5.4, 5.7, 5.7, 5.11, 5.20, 5.21, 5.26, 5.30-5.31, 5.32, 5.33, 5.35, 5.80, 5.81, 5.83, 5.84, 5.85, 5.86, 5.87, 5.88, 5.89, 5.90, 5.91, 5.92.

28

Moreover, Plaintiff asserts, *Oliver* left open the possibility that in some situations, barriers identified in an expert report might provide sufficient notice. *Id*. That exception applies here, Plaintiff asserts. *Id*. at 12. In support of this contention, Plaintiff points out that the August 18, 2010 Report was provided to Defendants, that Plaintiff's counsel stated in a letter to Defendants' counsel that the barriers in that Report were the ones at issue in the action, and that at the December 6, 2010 meet-and-confer, the parties discussed all of the items in the August 18, 2010 Report. *Id*.

Plaintiff concedes that three of the disputed barriers – items 5.2, 5.5 and 5.94 – do not relate to his disability because they relate to visual and hearing impairment. *Id*. at 9. He argues that the remaining barriers identified by Defendants in connection with this argument, that is, items 5.9, 5.10, 5.12, 5.13, 5.14, 5.15, 5.16, and 5.95, are, in fact, mobility-related, but also suggests that Defendants may have fixed these problems by the time a subsequent inspection occurred. *Id*. at 12-13.

Plaintiff argues that the issuance of a Certificate of Occupancy by the LBO does not warrant entry of summary judgment in favor of Defendants as to the 12 items identified by Defendants that are based on alleged building code violations rather than the ADAAG. *Id*. at 13-14.

With respect to the items in La Toque Restaurant and the Bank Café, Plaintiff rejects Defendants' position that these claims cannot be brought against VY Verasa as the owner on the basis that the owner and the tenant are jointly and severally liable, citing *Botoson v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000). *Id*. at 15. Plaintiff notes, however, that if the tenant, LT Napa Partners, is found to be an indispensible party under Rule 19 of the Federal Rules of Civil Procedure, it would like to request that it be brought into this action under Rule 19(a)(2).

Plaintiff argues that the burden of establishing that the removal of barriers is not readily achievable is on Defendants and that Defendants have failed to meet that burden. *Id*. at 16-21.

Finally, Plaintiff argues that the Court should retain jurisdiction over the State Law Claims even if it dismisses Plaintiff's ADA claim. *Id*. at 21-23.

United States District Court

For the Northern District of California

### 4.    Plaintiff's Summary Judgment Motion

Plaintiff seeks summary judgment 1) against VY Verasa for injunctive relief for the removal of "readily achievable" barriers and 2) for entitlement to damages against Intrawest Napa Development Company, LLC and Napa Riverbend Hospitality Management LLC (collectively, "Intrawest" or the "Intrawest Defendants") under the California Unruh Act (Cal. Civ. Code Sections 51 *et seq*.) or Disabled Person's Act (Cal. Civ. Code Sections 54 *et seq*.).  Plaintiff's Summary Judgment Motion at 2.

First, Plaintiff contends that he is entitled to injunctive relief because he has established that he was disabled on the basis of his disability, that certain barriers, identified in the August 18, 2010 Report, impede his access in violation of Title III of the ADA, and that Defendant VY Verasa has failed to establish that removal of the barriers is *not* readily achievable.  *Id*. at 14-17.   The barriers to which Mr. Margen was provided access during his March 23, 2012 inspection and which Plaintiff's expert finds have not been fixed are the following: 1.6, 2.5, 2.7, 2.8, 2.12, 2.13. 3.6, 3.10, 3.18, 3.43, 3.48, 4.44, 4.5, 4.28, 4.31, 4.34, 4.36, 4.37, 4.38, 4.41 and 4.43.  *Id*. at 9.  Also at issue are the barriers to which Mr. Margen was not given access during his March 23, 2012 site inspection, that is items 3.22-3.28 and 5.1 - 5.99.  *Id*. at 10.

Second, Plaintiff contends that he is entitled to damages against the Intrawest Defendants under California state law based on the evidence establishing the ADA violations because the ADA is incorporated into state law.  *Id*. at 18.

### 5.    Defendants' Opposition

In their Opposition, Defendants contend, as they did in their summary judgment motion, that the barriers as to which Plaintiff seeks injunctive relief, although identified in the August 18, 2010 Report, were not identified in Plaintiff's Second Amended Complaint and therefore, should be dismissed under *Oliver*.  Defendant's Opposition at 4-5.   In particular, Defendants state that "not one of the twenty-one alleged barriers at issue in Plaintiff's Partial Motion for Summary Judgment,

11

at 9:24-26, was mentioned in Plaintiff's SAC." *Id*. at 5.[6]   They further assert that VY Verasa is only required to remove barriers where removal is readily achievable, and that it is Plaintiff's burden to demonstrate that this standard is met. *Id*. at 5-9.  Defendants further contend that Plaintiff has not offered any evidence to show that removal of the barriers is readily achievable. *Id*.  Finally, Defendants assert that all of the barriers at issue in Plaintiff's Summary Judgment Motion comply with the ADA, rendering Plaintiff's claim moot. *Id*. at 9-24.  Finally, Defendants contend that because the ADA claim fails, the Court should decline to exercise supplemental jurisdiction over the State Law Claims.

### 6.   The Supplemental Briefs

Following the motion hearing, the parties submitted supplemental materials addressing item 3.24, which is directed at the seating in La Toque Restaurant.  In particular, the Court asked the parties to address the relevant ADA standards and guidelines governing restaurant seating where both booth and non-booth seating is provided.

## III.   THE MOTION TO DISMISS

Defendants contend that Plaintiff lacks standing under Article III of the U.S. Constitution to seek injunctive relief under the ADA.  The Court disagrees.

The ADA was enacted to address Congress's finding that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society . . . many people with physical or mental disabilities have been precluded from doing so because of discrimination." 42 U.S.C. § 12101(a)(1).  The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)

---

[6]The twenty-one items referenced by Defendants are the ones to which Mr. Margen was given access during his March 23, 2012 inspection and which Plaintiff contends have not been fixed.  As stated above, these are the following: 1.6, 2.5, 2.7, 2.8, 2.12, 2.13. 3.6, 3.10, 3.18, 3.43, 3.48, 4.44, 4.5, 4.28, 4.31, 4.34, 4.36, 4.37, 4.38, 4.41 and 4.43.  Defendants do not, however, address whether they were given fair notice as to the barriers to which Mr. Margen was not given access during his March 23, 2012 site inspection, that is items 3.22-3.28 and 5.1 - 5.99 (though elsewhere they contend that they did not receive fair notice of items 3.22, 3.25, 3.26 and 3.27, or of 5.1 - 5.99).

1    (the ADA provides a "broad mandate" "to eliminate discrimination against disabled individuals, and

2    to integrate them 'into the economic and social mainstream of American life.'")(quoting S.Rep. No.

3    101–116, p. 20 (1989); H.R.Rep. No. 101–485, pt. 2, p. 50 (1990), U.S. Code Cong. & Admin. News

4    1990, pt. 2, pp. 303, 332)).  Further, because the ADA is a civil rights statute that relies primarily on

5    private enforcement actions to obtain compliance, the Supreme Court has instructed that courts

6    should take a "broad view of constitutional standing." *Chapman v. Pier 1 Imports (U.S.) Inc*., 631

7    F.3d 939, 946 (9th Cir. 2011) (citing *Doran v. 7-11, Inc.*, 524 F.3d 1034, 1039 (9th Cir.

8    2008)(quoting *Trafficante v. Metro Life Ins. Co*., 409 U.S. 205, 209 (1972)).  Nonetheless, a plaintiff

9    asserting claims under the ADA must establish the existence of a case or controversy under Article

10   III of the Constitution.  *Id*.  (citing U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S.

11   555, 560 (1992)).

12        In *Chapman v. Pier 1 Imports (U.S.) Inc*., the Ninth Circuit addressed the requirements for

13   Article III standing to seek injunctive relief under the ADA.  *Id*.  The starting point of the court's

14   analysis was the general principal that to establish Article III standing, a plaintiff must demonstrate

15   that he or she has suffered an injury-in-fact traceable to the defendant's actions and that the injury

16   can be redressed by a favorable decision.  *Id*. (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d

17   1075, 1081 (9th Cir. 2004)).  In addition, to obtain injunctive relief a plaintiff must "demonstrate a

18   'real or immediate threat of repeated injury' in the future."  *Id*. (quoting *O'Shea v. Littleton*, 414

19   U.S. 488, 496 (1974)).  In *Chapman*, the court explained that under the ADA, actual injury does not

20   require that a barrier completely preclude a plaintiff from entering or using a facility in any way.  *Id*.

21   at 947.  Rather, it is sufficient that barrier "interfere with the plaintiff's 'full and equal enjoyment' of

22   the facility."  *Id*. (citing 42 U.S.C. § 12182(a)).  "Because the ADAAG establishes the technical

23   standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a

24   plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes

25   'discrimination' under the ADA."  *Id*.

26

27

28                                                                    13

**United States District Court**
For the Northern District of California

To meet the "real and immediate threat of repeated injury" requirement for injunctive relief, a plaintiff who has suffered injury-in-fact can demonstrate either that: 1) "he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier;" or 2) "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id*. at 950. As to the scope of an ADA plaintiff's standing, the *Chapman* court held that "[t]he ADA's remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that 'injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *Id*. at 951 (quoting 42 U.S.C. § 1288(a)(2)). Thus, "the ADA specifically does not require that the disabled individual personally encounter each architectural barrier as a predicate to seeking its removal." *Id*. Further, even where the barriers that were encountered are later remedied, an ADA plaintiff does not lose his standing to challenge unencountered barriers. *Id*. at 952 (citing *Doran*, 524 F.3d at 1047).

In *Chapman*, the court held that the plaintiff failed to establish injury-in-fact where he alleged only that he was "physically disabled" and that he visited the defendant's store and "encountered architectural barriers that denied him full and equal access." *Id*. at 954. He did not allege what the barriers were or how his disability was affected by them. *Id*. Instead, he attached to his complaint an accessibility study, which merely identified alleged ADA and California Building Code violations "without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment" of the facility. *Id*. at 955. Citing *Ashcroft v. Iqbal*, the court held that these were "precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8." *Id*. (citing 556 U.S. 662, 677). Because the plaintiff's allegations "[left] the . . . court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at [the defendant's store]," and also failed to "identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability" in the future, Plaintiff did not sufficiently allege standing. *Id*.

United States District Court

For the Northern District of California

Here, the allegations in Plaintiff's Second Amended Complaint are more detailed than those in *Chapman*.  Plaintiff does not simply offer a formulaic recitation of the applicable legal standard.  Rather, he alleges that he is disabled and requires the use of a wheelchair and walker for locomotion (SAC ¶ 1), that he "is unable to use portions of public facilities that are not accessible to disabled persons who require the use of a walker and wheelchair" (*id*.), and that he encountered specific barriers during a 2-night stay at the Hotel (*id*., ¶ 11).  Among the specific barriers he alleges he encountered is the lack of a lift to access the pool.  *Id*., ¶ 11(C).  Plaintiff alleges that when he asked an employee if there was any method of entering the pool without using the steps, he was told that "staff could carry him into the pool."  *Id*.  Because the lack of a pool lift – which is intended to assist those whose mobility is impaired in entering and leaving the pool – is related to Plaintiff's disability, the allegations are sufficient to establish injury-in-fact.  Further, because Plaintiff also alleges that he "wishes to return to the Hotel" but is deterred from doing so until the Hotel facilities are made accessible to him, SAC ¶ 15, Plaintiff has established standing to seek injunctive relief, even as to barriers that he did not encounter during his visit to the Hotel.  Therefore, the Court rejects Defendants' assertion that Plaintiff does not have standing to assert his ADA claim for injunctive relief against them and DENIES the Motion to Dismiss.

**IV.    DEFENDANTS' SUMMARY JUDGMENT MOTION**

    **A.    Items Plaintiff Stipulates are Now Accessible**

In the Update Joint Statement, Plaintiff stipulated that many of the items that were the subject of the parties' summary judgment motions have now been brought into compliance with the ADA Accessibility Guidelines.  Because the only relief available under the ADA is injunctive relief, Plaintiff's claim is now moot to the extent it is based on those items.  *See, e.g., Chapman v. Chevron Stations, Inc.*, 2011 WL 4738309, at *3-4 (E.D.Cal., October 5, 2011).  Therefore, Defendants' Summary Judgment Motion is granted as to all of the items that Plaintiff stipulated have been remedied, that is, items  1.6, 2.7, 2.8, 2.12, 2.13, 3.10, 3.18, 3.22, 3.23, 3.25, 3.26, 3.28, 3.43, 3.48,

1  4.4, 4.28, 4.31, 4.34, 4.36, 4.37 and "those guestroom items in 5.1 through 5.99 that are <u>not</u>

2  identified on pages 11-17 of the Margen Report at Docket No. 116."

3     **B.     Fair Notice**

4     Of the items previously stipulated as being in dispute, the following remain in dispute: 2.5,

5  3.6, 3.24, 3.27,  4.5, 4.13, 4.38, 4.41, 4.43, 5.4, 5.18, 5.34, 5.35, 5.43, 5.71, 5.79, 5.84, 5.96 and 5.97.

6  In addition, the new and unnumbered items in the June 4, 2012 Supplemental Report are also in

7  dispute.  Defendants argue that Plaintiff's ADA claim should be dismissed as to all of these except

8  item 3.24 on the ground that they were not given fair notice under the standards set forth by the

9  Ninth Circuit in *Oliver v. Ralph's Grocery Co.*, 654 F.3d 903 (9th Cir. 2011).[7]  The Court agrees.

10     The question of whether Defendants were afforded fair notice of the conduct at issue in this

11 action is governed by Rule 8 of the Federal Rules of Civil Procedure.  Rule 8 provides that a

12 complaint must provide a "short and plain statement of the claim showing that the pleader is entitled

13 to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy this requirement, the complaint must provide the

14 defendant with "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell*

15 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Where a complaint alleges

16 discrimination under the ADA due to architectural barriers, "the relevant 'grounds' are the allegedly

17

18     [7]In their Supplemental Brief, filed after the motions hearing to address the Court's specific
   questions regarding the substantive standards governing item 3.24, Defendants argued, for the first time,
19 that they had not been given fair notice of item 3.24.  *See* Defendants' Supplemental Brief Regarding
   Item 3.24 of Peter Margen's Report (Seating at the La Toque Restaurant) ("Defendants' Supp. Brief"),
20 at 13-14.  The Court rejects this argument for the following reasons.  First, Plaintiff alleged in his
   Second Amended Complaint that there was a "lack of accessible table seating in the café / restaurant
21 on the lobby level of the Hotel."  SAC, ¶ 11(D).  Although somewhat ambiguous, a plausible reading
   of that allegation is that the seating at the café *and* the restaurant were non-compliant.  Second,
22 Defendants' failure to raise this argument in their Summary Judgment Motion or Opposition brief as
   to item 3.24 undermines their assertion that they read the Second Amended Complaint to refer only to
23 the Bank Café.  Indeed, in Ms. Southam's most recent report, filed on June 13, 2012, she stated as to
   item 3.24 only that the ADA Accessibility Guidelines did not apply because there were no fixed tables
24 in La Toque;  in contrast, with respect to item 3.27 – another La Toque item – Ms. Southam stated that
   that barrier had not been identified in Plaintiff's complaint.  *See* Supplemental Declaration of Sara
25 Southam in Support of Defendants' Motion for Summary Judgment or in the Alternative Summary
   Adjudication and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Southam June
26 13, 2012 Declaration"), at 7-8.  Third, the Court finds that the argument is untimely as it was not raised
   in any of the motion papers filed prior to the hearing or even at the hearing itself.  Accordingly, the
27 Court rejects Defendants' untimely assertion that item 3.24 is barred under *Oliver*.

28                                                    16

non-compliant architectural features at the facility."  *Oliver*, 654 F.3d at 908 (citing *Pickern v. Pier 1 Imports (U.S.) Inc*, 457 F.3d 963, 968 (9th Cir. 2006)).  "Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint."  *Id.*

In *Oliver*, the court held that this standard was not met where it was undisputed that numerous barriers that were the subject of the plaintiff's summary judgment motion had been disclosed for the first time in an expert report and were *not* disclosed in the complaint.  *Id.* at 909. Under those circumstances, the court rejected the plaintiff's assertion that he was not required to identify all of the alleged barriers in his complaint because a plaintiff who encounters at least one barrier can sue to remove all barriers.  *Id.* at 909.  The court offered the following reasoning in support of its conclusion:

> Applying the principles of *Pickern* to this case, Oliver did not give the defendants fair notice that the barriers listed for the first time in the expert report were grounds for his claim of discrimination under the ADA. Oliver attempts to distinguish *Pickern* on the basis that Oliver filed his expert report before the close of discovery, unlike the plaintiff in *Pickern*. This distinction is unavailing. The issue underlying *Pickern*, as in this case, is whether the defendant had fair notice as required by Rule 8. In general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute. Here, for example, Oliver's expert report included the allegation that the exterior public telephone at the Food 4 Less store lacked an International Symbol of Accessibility, but Oliver did not seek summary judgment regarding this alleged barrier. Thus, Ralphs and Cypress Creek would have had to guess which of the items listed in the expert report were grounds for Oliver's claim, and which, like the exterior public phone, were not. Further, an expert report is typically filed later in the litigation process, after the defendant has already taken steps to investigate and defend against the claims in the complaint. *Cf. Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir.1989) (affirming the district court's denial of leave to amend a complaint because allowing an amendment "at this late date" would prejudice the defendant, who had "already incurred substantial litigation costs" in investigating and defending against the plaintiff's original theory of the case).

*Id.* at 908-909.

Similarly, in *Pickern*, upon which the *Oliver* court relied, the plaintiff alleged in the complaint that the defendants had violated the ADA by failing to remove architectural barriers but did not include the specific barriers that were the subject of the plaintiff's summary judgment motion.  457 F.3d at 968-969.  Those barriers were identified only in an expert report submitted by the plaintiff in support of her summary judgment motion.  *Id.* at 968.  The court found that these new

17

United States District Court

For the Northern District of California

1 barriers could not be considered, noting that although the complaint contained a long list of possible

2 barriers a disabled person *might* encounter, it did not allege that any of those barriers actually

3 existed.  *Id.*  The court reasoned that "[p]roviding a list of hypothetical possible barriers is not a

4 substitute for investigating and alleging the grounds for a claim."  *Id.*  On that basis, the court

5 concluded that the defendant had been given "no notice" of the barriers identified in the expert

6 report.  *Id.*

7        Plaintiff contends that the allegations here, in contrast to *Pickern* and *Oliver*, provide

8 sufficient notice because Plaintiff has alleged the general *categories* of barriers that exist at the Hotel

9 and that as a practical matter, Defendants *knew* that the barriers in the August 18, 2012 Report were

10 the ones at issue.  The *Oliver* court makes clear, however, that it is only the complaint that should be

11 considered in determining whether the fair notice requirement has been met.  The court offered two

12 justifications for this conclusion.  First, it reasoned that identifying the specific barriers that are at

13 issue only in the expert report does not provide fair notice because it leaves a defendant guessing as

14 to which barriers the plaintiff will actually proceed with.  Second, it pointed out that expert reports

15 are typically completed later in the case, giving rise to prejudice to a defendant who has already

16 incurred litigation costs defending under the plaintiff's earlier theory.  It is the second justification

17 that is particularly salient here.

18        The parties stipulated that the deadline to amend Plaintiff's complaint was December 19,

19 2011.  The Ninth Circuit decided *Oliver* several months before that date, in August 2011.  Yet

20 Plaintiff failed to amend his complaint to include the barriers identified in the August 18, 2010

21 Report.  Given that Plaintiff had identified certain specific barriers in his Second Amended

22 Complaint (see SAC, ¶¶ 11, 12) and that the law was clear by August 2011 that *specific* barriers had

23 to be identified in the complaint (and not just in an expert report), Defendants were entitled to rely

24 on the operative complaint in defending against Plaintiff's ADA claim.  Allegations listing general

25 categories of barriers simply are not enough to provide a defendant with fair notice, regardless of

26 what may be included in a plaintiff's expert's report.  Were the Court to reach a contrary result it

27

28                                                        18

United States District Court

For the Northern District of California

1   would, in essence, be forcing Defendants to defend against an ever-changing claim, with no apparent

2   cut-off point.  Indeed, Plaintiff has attempted to add several new barriers to his claim even in the last

3   few weeks, relying on a supplemental report by his expert conducted after the parties' summary

4   judgment motions were already fully briefed.  Clearly, there must be a point at which a defendant

5   facing claims under the ADA can be certain that all of the barriers at issue in the case have been

6   identified.  The requirement under *Oliver* that all barriers upon which a plaintiff wishes to proceed

7   must be identified *in the complaint* supports the conclusion that that point is the deadline for

8   amending the complaint.  *See O'Campo v. Chico Crossroads*, 2011 WL 5241351, at * 2-3

9   (E.D.Cal., October 31, 2011) (finding that barriers identified only in expert report were outside

10  scope of complaint under *Oliver* and explaining that "[w]hile a disabled plaintiff has standing to

11  challenge the barriers encountered as well as those discoverable," the plaintiff must file an amended

12  complaint "in order to properly present those additional barriers" and noting that "[d]iscovering such

13  additional barriers at the end of the discovery period, then attempting to amend a complaint when no

14  such amendment was contemplated, would place the defendant in the position of having to defend

15  against such new claims without proper notice or time to investigate").

16       On this basis, the Court finds that Defendants are entitled to summary judgment as to all of

17  the remaining disputed items except 3.24, which was adequately alleged in the Second Amended

18  Complaint.  *See* SAC, ¶ 11(D).

19       **C.      Whether Defendants are Entitled to Summary Judgment as to Item 3.24**

20            **1.      Whether Plaintiff's ADA Claim Fails as to Item 3.24 Because LT Napa
                        Partners Was Not Named as a Defendant**

21

22       Defendants contend that it is entitled to summary judgment on Plaintiff's ADA claim as to

23  any barriers in the La Toque restaurant because the restaurant is leased to LT Napa Partners, who

24  has full control over the restaurant area.  Therefore, Defendants argue, the ADA claim should be

25  dismissed as to these barriers for failure to dismiss an indispensible party.  Defendants are incorrect.

26

27

28                                                    19

In *Botosan v. Paul McNally Realty*, the Ninth Circuit expressly held that both the landlord and the tenant bear responsibility for ADA compliance, even if the lease provides that the tenant bears responsibility for ADA compliance. 216 F.3d 827 (9th Cir. 2000). The court relied on the regulations promulgated by the Department of Justice ("DOJ") on this question, which provide as follows:

> Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this party may be determined by lease or other contract.

*Id.* at 833 (quoting 28 C.F.R. § 36.201(b)). Relying on the phrase, "as between parties," the court found that under the regulation, "contractual allocation of responsibility has no effect on the rights of third parties," and therefore, both the landlord and the tenant are liable regardless of the terms of the lease. *Id.* The court went on to "take note of significant policy reasons for adhering to the DOJ's interpretation, " namely, that "[o]wners of public accommodations should not be permitted to contract away liability." *Id.* at 834. The court further explained:

> A landlord would be able to allocate all responsibility for ADA compliance to the tenant in the lease, and if the compliance measures were not "readily achievable" for the tenant, the plaintiff would have recourse against no one. Under the DOJ's interpretation of the regulation, however, the landlord is a necessary party in an ADA action, regardless of what the lease provides. The landlord can in turn seek indemnification from the tenant pursuant to their lease agreement. Not only does this construction of the regulation hamper efforts of a landlord and a tenant to evade ADA requirements, but it also aids in the enforcement of the Act. A landlord who is aware of its liability for any ADA violations found on its premises has a strong incentive to monitor compliance on its property.

*Id.* Thus, under *Botosan*, it is the landlord who is the indispensible party and not the tenant. Defendants did not address *Botosan* in their Reply brief and did not cite any authority for the proposition that a tenant is an indispensible party when an ADA claim has been asserted against the landlord. Therefore, the Court rejects this argument and denies Defendants' request for summary judgment as to item 3.24 on this ground.

### 2.      Whether Plaintiff Has Presented Evidence of an ADAAG Violation

Although Plaintiff concedes that one of the 19 tables in La Toque (over 5%) is accessible, he contends that under the ADA Accessibility Guidelines, Defendants are required to ensure that 5% of the *booth* seating is ADA compliant and that therefore there is at least a fact question as to whether item 3.24 constitutes an ADA violation.[8]  The Court disagrees.

Section 5.1 of the ADAAG, provides, in part, that "[w]here fixed tables (or dining counters where food is consumed but there is no service) are provided, at least 5 percent, but not less than one, of the fixed tables (or a portion of the dining counter) shall be accessible and shall comply with 4.32 as required in 4.1.3(18)."  Section 4.1.3(18) provides, in part, that "[i]f fixed or built-in seating or tables (including, but not limited to, study carrels and student laboratory stations), are provided in accessible public or common use areas, at least five percent (5%), but not less than one, of the fixed or built-in seating areas or tables shall comply with 4.32."  Finally, Section 4.32 provides that "[f]ixed or built-in seating or tables required to be accessible by 4.1 shall comply with 4.32.2 through 4.32.4."  Sections 4.32.2 states that "[i]f seating spaces for people in wheelchairs are provided at fixed tables or counters, clear floor space complying with 4.2.4 shall be provided."  Sections 4.32-3 and 4.32.4 address knee clearance and table height.

The Court finds the guidelines to be somewhat confusing to the extent that Section 5.1 refers only to "fixed tables" whereas Section 4.1.3(18) refers to "fixed or built-in seating or tables."  Here, it is undisputed that the booth tables are not fixed.  On the other hand, there is evidence that suggests that the booth seating *is* fixed.  To the extent that Section 5.1 is expressly directed at Restaurants and

---

[8]In his August 18, 2010 Report, Mr. Margen relied only on the ADAAG and California Building Code standards.  He did not cite ADAS standards.  Similarly, in his summary judgment motion and in opposition to Defendants' Summary Judgment motion, plaintiff relied only on ADAAG and CBC standards and did not cite ADAS standards.  *See* Plaintiff's Summary Judgment Motion at 5 ("Mr. Margen was asked to provide expert analysis to determine whether barriers to access for persons with . . .mobility disabilities existed at the Hotel and Restaurant . . . [and] to identify the applicable Americans with Disabilities Act Accessibility Guideline (ADAAG) standards for each such barrier and the applicable California Building Code (CBC) standards for each such barrier.").  Therefore, the court does not consider the ADAS provisions identified by Plaintiff at oral argument as this new theory is untimely.

United States District Court

For the Northern District of California

1    Cafeterias, while 4.1 is not, the Court finds that the language of Section 5.1, which refers only to

2    fixed tables, has more weight.  Therefore, the Court finds that the ADAAG guidelines do not apply

3    here because the tables in the booths are not fixed.

4         The Court also agrees with those courts that have concluded that, viewing all of the ADAAG

5    standards together, the 5% standard applies to the restaurant as a whole and does not impose a

6    separate requirement for booth seating.  *Stanford v. Del Taco, Inc.*, 2006 WL 2669351, at *3 (E.D.

7    Cal. Sept. 18, 2006) ("Although the ADAAG does require at least 5% of seating in a restaurant to be

8    accessible, there is no requirement that both table and booth seating be accessible as Plaintiff

9    asserts) (citing ADAAG 5.1);  *see also Wilson v. Norbreck*, 2006 WL 2651139, at * 2-4 (E.D. Cal.

10   Sept. 15, 2006) (holding that 5% rule applied to entire restaurant and therefore, because defendant

11   had provided accessible non-booth tables, the bar counter and booths did not need to be accessible).

12        For the reasons stated above, the Court finds that Defendants are entitled to Summary

13   Judgment on Plaintiff's ADA claim based on item 3.24.

14

15        **D.    Whether the Court should Exercise Supplemental Jurisdiction Over Plaintiff's
              State Law Claims**

16        Because the Court has found that Defendants are entitled to summary judgment on Plaintiff's

17   ADA claim as to all of the remaining disputed items, the Court must decide whether to exercise

18   supplemental jurisdiction over Plaintiff's State Law Claims.  A federal court's exercise of

19   supplemental jurisdiction is governed by 28 U.S.C. § 1367.  Section 1367(a) provides that "in any

20   civil action of which the district courts have original jurisdiction, the district courts shall have

21   supplemental jurisdiction over all other claims that are so related to claims in the action within such

22   original jurisdiction that they form part of the same case or controversy under Article III of the

23   United States Constitution." 28 U.S.C. § 1367(a).  Under § 1367(c), however, a district court has the

24   discretion to decline to exercise supplemental jurisdiction over a state law claim where one or more

25   of the following circumstances exists:

26        (1)    the claim raises a novel or complex issue of State law,

27

28                                              22

    (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)    the district court has dismissed all claims over which it has original jurisdiction, or

    (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(l)-(4).  The Ninth Circuit has held that § 1367 requires that the court exercise supplemental jurisdiction pursuant to § 1367(a) unless such exercise is prohibited by § 1367(b) or one of the specifically enumerated exceptions set forth in § 1367(c) applies.  *Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994).

Because the Court has dismissed Plaintiff's only federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's State Law Claims, which are dismissed under 28 U.S.C. § 1367(c)(3).

## V.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is DENIED.  Defendants' Summary Judgment Motion is GRANTED as to Plaintiff's ADA claim, which is dismissed in its entirety. Plaintiff's Summary Judgment Motion is DENIED.  Plaintiff's State Law Claims are dismissed without prejudice on the basis that the Court declines to exercise supplemental jurisdiction over those claims in the absence of any remaining federal claims in this action.  The Clerk is directed to close the file in this case.

IT IS SO ORDERED.

Date: July 20, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge

23

United States District Court

For the Northern District of California